# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## CAMPBELL, Jr. vs. The State.

### July Term, 1865.

1. On a motion to appoint a commissioner provided for in the act of the legislature of West Virginia, passsed November 13th, 1863, entitled, * "an act to provide for the forfeiture of property in this State, belonging to the enemies thereof," the circuit court should award a rule or summons against the person alleged to be an enemy of the State, requiring him within a reasonable time to appear and show cause against the motion : stating in such rule with reasonable certainty, the facts alleged to constitute such person an enemy of the State within the meaning of the act ; which rule or summons should be executed as required by chap. 170, of the Code of Virginia, 1860.

2. In default of service of the rule or summons as provided for in said chapter, an order of publication should be awarded according to law.

3. HELD : That, where a party alleged to be an enemy of the State had no notice of a motion to appoint a commissioner, under said act, to take into possession and custody his estate and effects, the judgment of the circuit court so appointing a commissioner, is erroneous.

4. In an appeal to this court, such facts must appear upon the record, as will constitute the party an enemy of the State within the meaning of the act; and it is not sufficient that the record states generally a conclusion from such facts.

*G. W. Caldwell,* of *Brooke* county, gave notice on the 21st day of November, 1864, to *James Hervey,* prosecuting attorney for that county, that he would move the circuit court at the November term ensuing, for the appointment of a commissioner to take possession of, collect and administer the estate of *Alexander Campbell, Jr.,* an enemy of the State

* Whereas certain persons, assuming to act in the name of the people of Virginia, have attempted to repeal the ratification of the constitution of the United States, and to deprive the people of West Virginia of the protection to which we are entitled under that instrument ; and have endeavored by force of arms, and by pretended ordinances and acts of legislation threatening forfeiture and confiscation, imprisonment and death, to subject us to the authority of the so-called Confederate States of America ; and whereas, because we have been unwilling to aid them in their effort to overturn the government under which we have heretofore lived and prospered, they have waged war against us, have encouraged conspiracies and insurrections in our midst, have excited desperate and unprincipled men among us to acts of robbery and murder, have declared us traitors and alien

of *West Virginia;* and that *Campbell* had estate consisting of land and other property in the county of *Brooke.*

At the term *Caldwell* filed an affidavit made before the clerk of the court, stating that from the best information he could obtain, he believed that *Campbell* was, and had been, aiding and abetting the so-called *Confederate States of America* in hostile action against the State of *West Virginia,* and that he was informed and believed that *Campbell* was an officer in the rebel army, and that he had property and claims subject to forfeiture in the county of *Brooke.*   Thereupon the court entered the following order:

"Upon a motion for the appointment of a commissioner under the act of the legislature of *West Virginia,* entitled, 'An Act to provide for the forfeiture of property in this State belonging to the enemies thereof, passed November 13th, 1863.' It being made to appear to the court that there is just cause to believe that *Alexander Campbell, Jr.,* who is shown by satisfactory proof to be an enemy of the State of

enemies, and, so far as they had power, have subjected to confiscation or forfeiture all property within this State belonging to those who support and uphold the lawful government of the land : therefore,

Be it enacted by the legislature of West Virginia :

1. Every person who shall aid or abet the so-called Confederate States of America, or the rebel state government at Richmond, in any invasion of this State or hostile action against the same; or who shall conspire with others to establish or maintain within this State, or any part thereof, the authority of the said Confederate States, or of the said rebel state government; or who shall accept, hold or exercise any office, commission or authority under the said Confederate States or the said rebel state government, shall be deemed for the purposes of this act, an enemy of this State; provided, that any person charged with being such enemy, may show in his defense that he acted under duress, or just fear of life, limb or personal liberty.

2. All the estate, real and personal, of such enemy, which may be found in this State, including all lawful demands of such enemy against any person residing therein, or any corporation having a place of business in the same, shall be forfeited to the use of this State, subject, as hereinafter provided, to the just debts of such enemy.

3. It shall be the duty of every circuit court, upon its being made to appear that there is just cause to believe that an enemy of the State has property or claims subject to forfeiture, as aforesaid, to appoint some proper person a commissioner to take possession of, collect and administer the estate of such enemy, pursuant to this act.   But of every motion for the appointment of such commissioner, the prosecuting attorney for the county where the motion is made shall have reasonable notice; and the court, in its discretion, may also require reasonable notice to be served on the attorney general, or any parties interested, by publication or otherwise; and award costs for or against any such party as may be right and proper.   No such motion shall be made in the circuit court of any county, unless the property or claims so subject to forfeiture, or the greater part thereof in value be in such county.   Where the court deems it proper, it may

*West Virginia*, has property within this county, claims and demands against persons residing therein subject to forfeiture under the provisions of the act aforesaid, the court doth appoint *George W. Caldwell* a commissioner to take possession of, collect and administer the estate of the said *Alexander Campbell, Jr.*, pursuant to said act; *James Hervey*, prosecuting attorney for said county of *Brooke*, having had reasonable notice of this motion, as appears from a writing filed with this proceeding; and thereupon the said *George W. Caldwell* together with *Campbell Tarr, David Munchland, William Patterson* and *Robert Boyd*, his sureties, who were qualified as to their sufficiency, entered into and acknowledged a bond which is approved by the court in the penalty of 10,000 dollars, the present full value of the said *Alexander Campbell, Jr's* estate, payable and conditioned according to law; also the said *George W. Caldwell* took the oath to support the constitution of the *United States* and the constitution of the State of *West Virginia*, and the oath faithfully to perform the duties of his said office to the best of his skill

cause a jury to be empannelled to try any question of fact arising upon such motion.

4. It shall be the duty of the prosecuting attorney, and attorney general, having notice, to see that the interest of the State is duly protected in regard to every such motion and all other legal proceedings under this act.

5. Every commissioner so appointed shall take the oaths prescribed by the first and second sections of the act passed June twenty-sixth, eighteen hundred and sixty-three, entitled " An Act concerning oaths and affirmations ;" and give bond to be approved by the court which appointed him, in a penalty equal, at the least, to the full value of the estate to be administered. He shall cause an inventory and appraisement of the estate to be made and filed, and shall state, return and settle his accounts in like manner as is required by law respecting the estates of persons dying intestate. The compensation to be allowed the commissioner shall be the same as that of an administrator. In reference to the personal estate, including debts and claims of the enemy committed to his hands to be administered, the commissioner shall, unless herein otherwise provided, have the same rights and authority, and be subject to the same liabilities as a personal representative of a deceased person in reference to the estate he represents; and all laws regulating the administration of the estates of deceased persons, shall, so far as they are consistent with this act, be deemed applicable to estates liable to forfeiture under this act.

6. The commissioner may sue and be sued by the name and style of "A. B., commissioner of C. D., an enemy of the State."

7. The commissioner shall take possession of all real estate of such enemy within this State, and lease, manage, sell and dispose of the same under direction of the court which appointed him. He may convey any of such real estate, but no sale or conveyance thereof shall be valid until reported to and confirmed by the said court. The conveyance of real estate by a commissioner appointed and qualified as aforesaid, shall, when confirmed by the court which appointed him,

and ability and judgment, and *Eli Green, Andrew Smith* and *Hiram Fowler* are appointed to appraise said estate."

*Campbell* petitioned this court for a supersedeas to the order, alleging that he was unjustly charged with being an enemy of the State; that the affidavit of *Caldwell* was insufficient to justify the order, and that the act of the legislature authorizing such proceedings was unconstitutional.

*James S. Wheat* for the plaintiff in error.

The proceedings in the court below were wholly irregular and in opposition to the constitution of the State of *West Virginia.*

It will be seen by reference to the preamble of the act of forfeiture, Acts of Legislature, 1863, page 131, that it is to be enforced against the people of *Virginia* only, and they being non-residents must be proceeded against by publication.

The 9th section of the act provides that the court below may revoke its order appointing a commissioner for good cause. Has the petitioner a right to come here for relief? It is true the court below may revoke, but the property of the party is liable to be sequestrated by the commissioner between the terms. But the order below was final in its

pass to the grantee all the right, title and interest therein of the person named as an enemy of the State in the order appointing such commissioner; and such conveyance shall not be impeached or invalidated by reason merely of any irregularity of proceeding.

8. No sale of personal estate made by any such commissioner, or any payment made to him, shall be impeached or invalidated by reason merely of any irregularity of proceeding.

9. The court which appointed the commissioner may at any time, if it appear that the person named as an enemy of the State in the order of appointment was not justly charged as such, or for any other good cause shown, revoke such order and annul the authority of the commissioner; but such order, until so revoked, shall be deemed valid to all intents and purposes, and no conveyance or sale *bona fide* made shall be invalidated by any subsequent revocation of the authority of the commissioner.

13. Every commissioner shall within twelve months after his appointment, and once in every six months thereafter, until the estate he represents be fully administered and settled, cause his accounts therewith to be stated and settled; and when the balance in his hands, if any, is ascertained by or under direction of the proper court, shall, within thirty days thereafter, pay such balance into the treasury of the State, unless the court, for good cause shown, otherwise order. And if any claim against the estate remain unpaid which the assets remaining in the hands of the commissioner shall not be sufficient to satisfy, the legislature, on petition of the claimant, shall cause justice to be done out of the money received into the treasury from such estate, so far as the same may be sufficient.

character, and hence the only relief is to be had in this court.

The irregularity of the proceedings below gives jurisdiction here. The law, as will be seen on pages 744–45 of the Code of 1860, provides, that any person showing himself aggrieved in the appointment of a personal representative, shall have the right to appeal; the act of the legislature upon which this proceeding is based and which styles the party to whom the estate is committed, a commissioner, and requires him to settle as an administrator, must be subject to the same rules. Likewise if the title to property is involved an appeal may be had; also where the order or judgment is final, and such is the case here, where the commissioner assumes entire control and possession.

No process was had against this petitioner. Will it be contended that a party who lived in *Louisiana* shall be proceeded against, though he had estate here, without some process? The Code of 1860, provides, that no order shall be made on a return of *nihil;* so likewise a party must be brought into court by notice, before judgment can be rendered.

The Act of the Legislature of this State, 1863, page 30, provides for publication against absent defendants. The act now under consideration does not provide any particular mode of proceeding, but it must conform to the general rules of law governing similar cases.

The act of Congress providing for forfeitures, (Brightly's . Digest, page 1235,) prescribes a form of proceeding, but ours does not. The form of proceeding must be in consonance with our form of government, and that a party must have a day in court, and no *ex parte* trial will avail. Any other proposition is monstrous.

The facts appearing upon the record do not justify such an order as was made. No evidence of his being an enemy to the State is found. To what class of persons declared to be enemies of the State does he belong? Nothing is found in this record. How therefore is the party to meet the allegations in a subsequent effort to release himself from the result of this proceeding.?

The act is repugnant to the constitution of the State. That instrument requires that a trial by jury shall be had when amounts over 20 dollars are involved. This act provides that a jury shall be called only at the option of the judge.

The whole act is in contravention of the constitution of the *United States*, and the mode of proceeding in this case is against the spirit of our republican institutions and constitutional law.

*Daniel Peck* for the State.

Ought this court to take jurisdiction now, to render a judgment in this case? certainly not. The court below had jurisdiction. The act under which this proceeding was had, is not an act against treason, but is *lex talionis*, as the preamble discloses. The law itself, in the 3rd section, provides that the court below may revoke its proceedings upon satisfactory showing that no action ought to have been had. The Code of *Virginia* of 1860, page 743, provides that judgments had by default shall be corrected in the court where the same was had. The court below is the only tribunal where the order confiscating the petitioner's estate can be set aside. If the petitioner had gone into the court below, and sought to show matter against the judgment therein, and been refused any relief, then the matter spread upon the record would have been the proper subject for investigation here.

The statute does not require any particular mode in which it shall be made to appear, that the party is an enemy of the State; it must appear to the satisfaction of the court that he is such.

The law does not require that the evidence by which a court arrives at a conclusion shall be spread upon the record, unless it is incorporated in a bill of exceptions; nor will it inquire into it unless it appears on its face to be insufficient. In this case the proof is stated to be satisfactory. It is to be presumed that some or all of the elements of the offenses which constitute an enemy of the State were proven.

*Attorney General Hall* for State.

The act under consideration does not assume to extend its operations repugnantly to the constitution of the *United States*, but it provides that the property of all persons who seek to establish a government hostile to the State of *West Virginia*, or set up any other government within its limits, shall be liable to forfeiture.

There is nothing in the act which requires that any thing shall be necessary to establish the offense in any manner other than that it shall be done to the satisfaction of the court. No particular formula is required. But it is held that notice to the defendant was required. When men turn upon the government for the purpose of destroying it, should they not forfeit all claims to the immunities and privileges of it?

No notice is required in the appointment of an administrator, and if one should be wrongfully appointed, the court appointing will remove. This, or a similar remedy, is provided by this law in the 9th section. The party may show that he is no enemy of the State, and have the order revoked. This proceeding is somewhat analagous to an attachment, and is *in rem*, and no service of process is necessary. The fund or estate is in the hands of the agent of the State, who has given bond for indemnity and at any time the petitioner may when he comes forward, establish his innocence of the *ex parte* action of the court, and receive his estate from the State. The order of the circuit court is not a finality, but a mere preliminary order.

The proceedings under this law, as indeed all forfeitures, are not cognizable by criminal but civil tribunals; the proceeding is similar to that of courts of admirality where it is *in rem*, and where the court complies with the language of the statute it is sufficient, and all that the appellate court can investigate. 12 Wheat, 12, 14.

The present case is not a trial for a crime, but is one in which the defendant is charged with being an enemy of the State, and hence the 8th section of article 11 of the constitution, does not apply.

There is nothing in the law that is contradictory to the constitution; nor is there anything harsh or unjust. This court must be satisfied not of the constitutionality of the law, but of its unconstitutionality. It must be such a law as is a palpable and open violation of the constitution.

*Daniel Lamb*, for plaintiff in error, in reply.

The act under which this proceeding is had is unconstitutional. No person shall be deprived of his property or liberty without due process. This is more than a judgment by default, where process is served on the defendant. But this proceeding is had without any process, contrary to the principles of the common law of any and all governments.

Does the record present sufficient to warrant an affirmance of the judgment of the circuit court?

The facts necessary to be established must be by competent and sufficient testimony. The record furnishes very brief testimony of proof of the defendant being an enemy of the State: nothing more than the affidavit of one party that he believed such was the case. Is this evidence at all? Where an inferior court takes general jurisdiction when authority is conferred by statute, its action is void, and the face of the proceedings must show that it acted within the scope of its authority and the facts must be set forth on the record. 2 Bac. Abr., 105. Phil. on Ev. (*Cowan's* notes) 1030. Supplt. U. S. Digest, 49, 50, 53, title jurisdiction. 6 Wheat., 127. 11 Ohio State Reports. 7 Hill, 24. 19 Johns, 39, 57. 6 Hill, 311.

There is no such appearance on the face of this record. It should appear that the authority was exercised according to law, and the record should show that the defendant might, before an appellate tribunal, establish his right to have the proceedings reviewed. 12 Ohio, 139. The record here does not show that the defendant was before the court.

The act we are now considering, is either for the punishment of a crime committed by the defendant, or in the exercise of a belligerent right. If it is a judicial proceeding, it is in violation of the constitution of the State. The

2d section of article 11, provides, that, "No person shall be held to answer for treason, felony or other crime not cognizable by a justice, unless on presentment or indictment of a grand jury." The 8th section of the same article provides, that trials shall be by jury.

But it is contended here that this court has not cognizance of this case. All questions involving the constitutionality of a law are properly matter for this court. No legislation can take that right away from this court.

This is not judgment by default; where that is the case process on the defendant is necessarily implied. But nothing of that kind appears here, and the presumption must arise that there was none.

In an action in inferior courts, the facts which are necessary to show jurisdiction of the case must appear upon the face of the proceedings: 1 Term.R., 151; and although the inferior court is a court of general jurisdiction, yet when it acts under a particular statute all that is necessary to show that it acted strictly in accordance with that statute, must appear. 11 Ohio State Rep., 224.

This does not appear here. There is nothing to show that the property of the petitioner was in the county of *Brooke*, or what it was that he did to make him an enemy of the State, as prescribed by the statute.

The proceeding is analagous to that of admiralty, where everything that can bring such light as will enable a fair and open hearing to be had, is necessary to be stated in the libel *in rem*, in a distinct and unequivocal manner. 9 How., 259; 18 Curtis, 134.

According to the act, the court may, in its discretion, make any persons parties by publication or otherwise. This discretion is obligatory upon the court when, as in this case, public laws are to be enforced. 9 Grat. 371; 2 Salk, 609.

BROWN, J., delivered the opinion of the court.

This case involves the construction of the act of November 13th, 1863, entitled, "An act for the forfeiture of prop-

erty in this State, belonging to the enemies thereof."
This act was passed in the midst of a war which involved in
its issues the existence of the State, and the lives, property
and liberty of its people.    It bears on its face the evidence
of the fact that it is a war measure; and since its provisions
are new and extraordinary it should not be loosely inter-
preted nor improvidently executed.

The title states the object of the act.    It is to provide for
the forfeiture of property in the State, belonging to the
enemies thereof.    The third section makes it the duty of
the circuit court, upon a proper case made, to appoint a
commissioner to take possession of, collect and administer
the estate of such enemy pursuant to the act.    The court is
of opinion, that on a motion to appoint such commissioner,
based upon any proper evidence, such as the affidavit of a
witness, the suggestion of the attorney for the State, the
presentment of a grand jury, or the proclamation of the
Governor, the court should award a rule or summons against
the person alleged to be an enemy of the State, and whose
estate is sought to be committed for that cause to a commis-
sioner, requiring such person within a reasonable time to
appear and show cause, if any he can, against the motion:
stating in such rule or summons, with reasonable certainty,
the facts alleged to constitute such person an enemy of the
State within the meaning of said act; which rule or sum-
mons should be executed as required by chapter 170 of the
Code of Virginia of 1860.

In default of such service, an order of publication should
be awarded, as therein provided.    And it would seem most
proper that the questions of fact alleged in the rule or sum-
mons, should be tried by a jury.

And it appearing from the record that no day in court
was given to the plaintiff in error, to make his defense on
said motion; nor do the facts appear from the record, which
the statute requires to constitute him an enemy of the State
within the meaning of said act; and because it is not suf-
ficient that the record states generally the conclusion from
such facts, that the party was an enemy of the State, the

said judgment of the circuit court of Brooke county is erroneous and should be reversed, and the cause remanded to that court for further proceedings to be had therein in conformity with the principles indicated in the foregoing opinion.

JUDGMENT REVERSED.